**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

ANTONIO SOTO,

    Petitioner,

vs.　　　　　　　　　　　　　　　　　Case No.　　3:11-cv-1124-J-34MCR
　　　　　　　　　　　　　　　　　　　　　　　　3:08-cr-204-J-34MCR

UNITED STATES OF AMERICA,

    Respondent.

## **ORDER**

This case is before the Court on Petitioner Antonio Soto's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody under 28 U.S.C. § 2255, (Doc. 1, Motion to Vacate)[1], as well as his Memorandum of Law in Support of the Motion to Vacate, Set Aside, or Correct Sentence, (Doc. 2, Supporting Memorandum), both filed on November 14, 2011. The United States filed its Response to the Motion to Vacate on February 20, 2013. (Doc. 11, Government's Response in Opposition).

Pursuant to 28 U.S.C. § 2255 and Rule 8(a) of the Rules Governing Section 2255 Proceedings[2], the Court has considered the need for an evidentiary hearing and determines that an evidentiary hearing is not necessary to resolve the merits of this

---

[1] Citations to Soto's criminal case file, <u>United States of America v. Antonio Soto</u>, 3:08-cr-204-J-34MCR, are denoted as "Crim. Doc.___." Citations to Soto's civil § 2255 case file, 3:11-cv-1124-J-34MCR, are denoted as "Doc. ___."

[2] Rule 8(a) of the Rules Governing Section 2255 Proceedings requires the Court to review the record, including any transcripts and submitted materials, to determine whether an evidentiary hearing is warranted before deciding on a § 2255 motion.

1

action. See Aron v. United States, 291 F.3d 708, 714–15 (11th Cir. 2002) (indicating that an evidentiary hearing on a § 2255 petition is not required when the petitioner asserts allegations that are affirmatively contradicted by the record or patently frivolous, or if in assuming the facts that he alleges are true, he still would not be entitled to any relief); Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (concluding that a petitioner's ineffective assistance claim can be dismissed without an evidentiary hearing when the petitioner alleges facts that, even if true, would not entitle him to relief); Dickson v. Wainwright, 683 F.2d 348, 351 (11th Cir. 1982) ("On habeas a federal district court need not conduct an evidentiary hearing if it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel."); Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007).[3]

For the reasons set forth below, the Motion to Vacate is due to be **DENIED.**

**I.      Background**

On May 29, 2008, a grand jury sitting in the Middle District of Florida returned an indictment charging Antonio Soto with one count of conspiracy to distribute 50 grams or more of methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846. (See Crim. Doc. 1, Indictment). These provisions are part of the Controlled Substances Act (CSA). Soto entered a plea of guilty to the charge pursuant to a written plea agreement on March 19, 2010. (Crim. Doc. 35, Plea

---

[3] Although the Court does not rely on unpublished opinions as precedent, they may be cited throughout this Order as persuasive authority on a particular point. Rule 32.1 of the Federal Rules of Appellate Procedure expressly permits the Court to cite to unpublished opinions that have been issued on or after January 1, 2007. Fed. R. App. P. 32.1(a).

Agreement; Crim. Doc. 50, Plea Tr.).  Soto's plea agreement included a limited waiver of direct and collateral appeals, which allowed Soto to appeal his sentence only if it (a) exceeded the statutory maximum, (b) exceeded the advisory sentencing guidelines range as determined by the Court, or (c) violated the Eighth Amendment to the United States Constitution.  See Plea Agreement at 6.  At a sentencing hearing held on November 8, 2010, this Court sentenced Soto to the mandatory minimum term of imprisonment of 120 months.  (Crim. Doc. 46, Judgment; Crim. Doc. 51, Sentencing Tr.).  Soto filed a timely notice of appeal, and his attorney raised two sentencing issues in a brief submitted pursuant to Anders v. California, 386 U.S. 738 (1967).[4]  Following an independent review of the record, the Eleventh Circuit Court of Appeals affirmed Soto's conviction and sentence on July 11, 2011.  (Crim. Doc. 56, USCA Judgment).

Soto did not seek certiorari review by the Supreme Court.  Therefore, his conviction and sentence became final upon the expiration of the 90-day period for filing a petition for a writ of certiorari.  Kaufmann v. United States, 282 F.3d 1336, 1338 (11th Cir. 2002) (conviction becomes "final" for purposes of 28 U.S.C. § 2255 at the expiration of the 90-day period for filing a petition seeking certiorari review where petitioner does not request the writ); see also Gonzalez v. Thaler, 132 S. Ct. 641, 653-54 (2012) (interpreting an identical statute of limitations applicable to 28 U.S.C § 2254, holding conviction becomes "final" at the expiration of the 90-day period for seeking a writ of certiorari).  Soto's conviction and sentence thus became final on October 9, 2011, from which date Soto had one year to apply for habeas corpus relief.  28 U.S.C. 2255(f)(1).

---

[4] An Anders brief is also commonly referred to as a "no-merits brief."

3

Soto filed his Motion to Vacate on November 14, 2011, and the Motion is therefore timely.

## II.     Soto's Motion to Vacate

Soto's Motion to Vacate raises two issues.  First, Soto argues that this Court lacked jurisdiction to sentence him because the CSA exceeds Congress' lawmaking authority under the Commerce Clause, U.S. Const., art. I, § 8, cl. 3, and the Tenth Amendment to the United States Constitution, and because Florida is not a "State" of the "United States."  Supporting Memorandum at 3-17.  Second, Soto argues that his counsel rendered ineffective assistance by (1) failing to object to the Court's jurisdiction and (2) failing to object to the use of uncounseled prior convictions to increase his sentence under the United States Sentencing Guidelines (Sentencing Guidelines).  See Supporting Memorandum at 17-19, 25-26.

## III.    Opinion

Pursuant to Title 28, United States Code, Section 2255, a person in federal custody may move to vacate, set aside, or correct his sentence. Section 2255 permits such collateral challenges on four specific grounds: (1) the imposed sentence was in violation of the Constitution or laws of the United States; (2) the court did not have jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C §2255(a) (2008).  Only jurisdictional claims, constitutional claims, and claims of error that are so fundamentally defective as to cause a complete miscarriage of

4

justice will warrant relief through collateral attack. United States v. Addonizio, 442 U.S. 178, 184-86 (1979). A petitioner's challenge to his sentence based on a Sixth Amendment claim of ineffective assistance of counsel is normally considered in a collateral attack. United States v. Teague, 953 F.2d 1525, 1534 n. 11 (11th Cir. 1992).

As noted earlier, Soto's Plea Agreement included a waiver of direct and collateral appeals, with certain exceptions not applicable here. See Plea Agreement at 6. A petitioner's right to directly or collaterally challenge his sentence may be barred if he effectively waived that right pursuant to a plea agreement. Williams v. United States, 396 F.3d 1340, 1341-42 (11th Cir. 2005), cert. denied, 546 U.S. 902 (2005) (holding that petitioner's valid sentence-appeal waiver made pursuant to a plea agreement precluded him from collaterally attacking his sentence later on a claim of ineffective assistance of counsel during sentencing); Boyle v. United States, 446 F. App'x 216, 219 (11th Cir. 2011) (per curiam); Thompson v. United States, 353 F. App'x 234, 235 (11th Cir. 2009) (per curiam) ("When a valid sentence-appeal waiver containing express language waiving the right to attack a sentence collaterally is entered into knowingly and voluntarily, it will be enforceable and serve to prevent a movant from collaterally attacking a sentence on the basis of ineffective assistance of counsel."); United States v. Garcia, 213 F. App'x 817, 821 (11th Cir. 2007) (per curiam). To be enforceable such that a plea agreement's sentence-appeal waiver will bar a § 2255 challenge, the waiver must be made knowingly and voluntarily. See Williams, 396 F.3d at 1341 (citing United States v. Bushert, 997 F.2d 1343, 1350-51 (11th Cir. 1993)). To establish that a waiver

5

was made knowingly and voluntarily, the Government must demonstrate either that: (1) the district court specifically questioned the petitioner concerning the sentence-appeal waiver during the plea colloquy, or (2) the record clearly shows that the petitioner otherwise understood the waiver's full significance. Id.

Nevertheless, a sentence-appeal waiver will not bar certain Sixth Amendment ineffective assistance of counsel claims from being considered pursuant to § 2255. When a petitioner alleges an ineffective assistance of counsel claim that challenges the validity or voluntariness of the plea or waiver itself, such as a claim that counsel coerced or misadvised petitioner prior to entry of the plea, then the sentence-appeal waiver will not bar a court from hearing the merits of the claim. See Baird v. United States, 445 F. App'x 252, 254 (11th Cir. 2011) (per curiam) (noting that despite a sentence-appeal waiver, collateral attack through an ineffective assistance claim is permitted when "the movant challenges the knowing and voluntary nature of the plea")[5]; see also Patel v. United States, 252 F. App'x 970, 971, 974-75 (11th Cir. 2007) (per curiam) (finding that the district court erred in dismissing, based on a sentence-appeal waiver, petitioner's claim that counsel misadvised him prior to pleading guilty); Cowart v. United States, 139 F. App'x 206, 207-08 (11th Cir. 2005) (per curiam) (holding that a sentence-appeal

---

[5] In Baird, the Eleventh Circuit addressed the merits of the petitioner's ineffective assistance claim challenging the validity of both his plea and sentence-appeal waiver. See Baird, 445 F. App'x at 253-54. The petitioner alleged that he unknowingly and involuntarily entered a guilty plea due to his counsel's failure to properly explain to him the terms of his waiver in his plea agreement. Id. The court held that the petitioner was not entitled to relief because he did not show sufficient prejudice, namely, that there was a reasonable probability he would not have pleaded guilty if counsel had explained the terms of the waiver. Id. (finding that the petitioner's decision to plead guilty was primarily driven by the government's agreement not to forfeit his property, and that counsel's explanation of the waiver would not have deterred his plea.).

waiver that only expressly limits a petitioner from collaterally challenging his "sentence" does not bar an ineffective assistance claim that challenges the validity of his plea or the sentence-appeal waiver itself).  Therefore, despite the presence of a sentence-appeal waiver, the Court must address the merits of a § 2255 petitioner's claim of ineffective assistance if it challenges the validity of the plea or waiver. Id.

Additionally, challenges to a court's subject matter jurisdiction survive a sentence-appeal waiver.  Both the United States Supreme Court and the Eleventh Circuit Court of Appeals have explicitly recognized that challenges to a court's subject matter jurisdiction cannot be waived, forfeited, or procedurally barred. United States v. Cotton, 535 U.S. 625, 630 (2002) (stating that subject matter jurisdiction can never be forfeited or waived because it involves a court's power to hear a case); United States v. Peter, 310 F.3d 709, 712 (11th Cir. 2002) (jurisdictional error "can never be waived by parties to litigation").  Such challenges survive a sentence-appeal waiver not because of any procedural defect in the procurement of the waiver, but because the claim is too substantively important to forfeit due to its relationship to a court's very authority to hear a case. See Cotton, 535 U.S. at 630.

Soto's Plea Agreement stated in unambiguous terms that Soto waived his right to challenge his sentence through direct appeal or collateral review. Plea Agreement at 6. At his plea hearing, Soto confirmed to the Court that he reviewed the plea agreement before he and his attorney signed it.  Plea Tr. at 11-12.  The magistrate judge specifically advised Soto that he was waiving his right to direct and collateral appeals if

7

he entered the plea agreement, and Soto, who was under oath, swore that he understood. Id. at 14. The Court then asked Soto if anyone had threatened or forced him to waive his right to appeals, and Soto said no. Id. at 15. Soto affirmed that he voluntarily waived his appeals, and that he had no questions about his plea agreement. Id. Thereafter, Soto confirmed that he was pleading guilty because he was in fact guilty, and that he made that plea knowingly and voluntarily. Id. at 15, 18-21. Both the written plea agreement and plea transcript show that Soto was specifically advised that he was waiving his right to direct and collateral appeals, and that Soto knowingly and intentionally accepted that waiver. See Plea Agreement at 6; Plea Tr. at 11-12, 14-15, 18-21. Accordingly, Soto's plea waiver bars his claims to the extent they do not challenge the validity of the plea agreement or the Court's subject matter jurisdiction. See Williams, 396 F.3d at 1341-42; Baird, 445 F. App'x at 254; Cotton, 535 U.S. at 630. Because Soto raises two challenges to this Court's subject matter jurisdiction, the Court will address those claims on the merits. With respect to Soto's claims of ineffective assistance of counsel that are unrelated to the validity of his plea agreement, the Court rejects those claims for reasons set forth below.

### A. Jurisdiction

Soto first asserts that this Court lacked jurisdiction over his criminal case because the CSA violates principles of federalism embodied in the Commerce Clause, U.S. Const. art. I, § 8, cl. 3, as well as the Tenth Amendment's reservation of powers in the states. U.S. Const. amend. X. The United States Supreme Court has previously

addressed the constitutionality of the CSA, and found it to be a proper exercise of Congress' authority to regulate interstate commerce. See Gonzales v. Raich, 545 U.S. 1 (2005). In Raich, the Court held that Congress may lawfully regulate the intrastate cultivation of marijuana – even for purely personal consumption – because the cumulative impact of such production substantially affects the interstate market for the drug. Id. at 17-20, 22. Noting the Supreme Court previously upheld quotas limiting the production of wheat for purely personal consumption in Wickard v. Filburn, 317 U.S. 111 (1942), the Raich Court observed the similarities between the Agricultural Adjustment Act at issue in Wickard and the CSA at issue in Raich and here:

> Like the farmer in Wickard, respondents are cultivating, for home consumption, a fungible commodity for which there is an established, albeit, illegal interstate market. Just as the Agricultural Adjustment Act was designed to control the volume of wheat moving in interstate and foreign commerce in order to avoid surpluses and consequently control the market price, a primary purpose of the CSA is to control the supply and demand of controlled substances in both lawful and unlawful drug markets.

Raich, 545 U.S. at 18-19 (citations omitted). The distribution of methamphetamine, to which Soto has pled guilty, bears at least as strong a relationship to interstate commerce as the cultivation of marijuana or wheat for personal consumption. Indeed, distribution is a "quintessentially economic" activity, the total incidence of which implicates Congress' regulatory power if it substantially affects interstate commerce. Id. at 25-26. The production, sale, or distribution of methamphetamine, even if purely intrastate, affects an established interstate market for the drug by influencing the supply, demand, and market price of the substance. It does not matter that Soto's particular

activities may have been confined to Florida, Congress has the "power to regulate purely local activities that are part of an economic class of activities that have a substantial effect on interstate commerce." Raich, 545 U.S. at 17; see also Perez v. United States, 402 U.S. 146, 151-52 (1971); Wickard, 317 U.S. at 127–29. Soto's claim that the CSA exceeds Congress' lawmaking authority is therefore without merit, and foreclosed by Raich.

Soto also relies on Bond v. United States, 564 U.S. ___, 131 S. Ct. 2355 (2011) ("Bond I"), in support of his argument that the CSA interferes with state sovereignty under the Tenth Amendment. Supporting Memorandum at 5, 7, 21, 24. In Bond I, the Supreme Court addressed the question of whether a citizen has standing to mount a Tenth Amendment challenge to a federal law. Id. at 2360, 2365-67. The defendant in Bond I was a scorned lover who attempted to attack her husband's pregnant girlfriend with a chemical substance, resulting in a mild burn on the victim's thumb. Id. at 2360. The United States charged Bond with violating 18 U.S.C. § 229, which prohibits the knowing use or possession of dangerous chemicals that can cause death, temporary incapacitation, or harm to humans. Bond I, 131 S. Ct. at 2360-61. Congress enacted that statute under the Chemical Weapons Convention Implementation Act of 1998, 112 Stat. 2681-856 (1998), which was designed to deal with terrorists and rogue governments. Following her conviction, Bond attempted to raise her Tenth Amendment challenge to the statute's validity on appeal, but the Third Circuit Court of Appeals found her to lack standing to do so. See Bond I, 131 S. Ct. at 2360-61. On certiorari review,

the Supreme Court concluded that a citizen does have standing to challenge the constitutionality of a law on the ground that it violates principles of federalism, but did not reach the merits of Bond's challenge, instead remanding the matter to the Third Circuit Court of Appeals. Id. at 2366-67. After the Third Circuit Court of Appeals once again affirmed Bond's conviction and sentence, the case returned to the Supreme Court for consideration of the merits. Bond v. United States, 134 S. Ct. 2077, 2086 (2014) ("Bond II"). On June 2, 2014, the Supreme Court issued an opinion on the merits, holding that the statute in question did not reach the defendant's "unremarkable local offense." Id. at 2083. In doing so, the Court opined that a federal law designed to address the use of chemical weapons by rogues and terrorists would not be construed as reaching the conduct of a bitter lover who causes a minor thumb burn, absent a clear indication by Congress to the contrary. Id. In Bond II, the Court avoided the question of whether the statute itself violated principles of federalism, remarking it is "a well-established principle governing the prudent exercise of this Court's jurisdiction that normally the Court will not decide a constitutional question if there is some other ground upon which to dispose of the case." Id. at 2087 (quoting Escambia County v. McMillan, 466 U.S. 48, 51 (1984) (per curiam)). Instead, the Court narrowly interpreted the law as not covering the defendant's actions in the first instance. Id. *14.

Neither Bond I nor Bond II overturns the Court's holding in Gonzales v. Raich that the CSA is a constitutional exercise of Congress' regulatory power pursuant to the Commerce Clause. Unlike causing a superficial thumb burn with a chemical irritant,

11

Soto's participation in a conspiracy to distribute methamphetamine implicates federal authority to regulate interstate commerce. See Raich, 545 U.S. at 16-20. Further unlike the defendant's conduct in Bond I and Bond II, the distribution of methamphetamine is squarely covered by the terms of the CSA, which makes it unlawful for any person knowingly or intentionally "to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. §841(a)(1). The statute also identifies methamphetamine as a controlled substance, for which a specific penalty is prescribed where more than 50 grams of the drug are involved, as was the case here. 21 U.S.C. §841(b)(1)(A)(viii). Soto's reliance on Bond I (or Bond II) is therefore inapposite.

Soto's second jurisdictional challenge is premised on his contention that Florida is not a "State" of the "United States." Supporting Memorandum at 12. By an act of Congress on March 3, 1845, Florida was "admitted into the Union on equal footing with the original states, in all respects whatsoever." 5 Stat. 742, c. 48 (1845). Florida unsuccessfully attempted to secede from the Union during the Civil War of 1861 to 1865, but Florida's congressional delegation was fully restored in 1868. 15 Stat. 73, c. 70 (1868). As such, there is no merit to the jurisdictional claim that Florida is not a "State" of the United States. The Court had jurisdiction to sentence Soto for his admitted violations of the Controlled Substances Act.

**B.  Ineffective Assistance of Counsel**

Soto seeks to collaterally attack his sentence on the ground that he received ineffective assistance of counsel at his sentencing.  See Supporting Memorandum at 17-19, 25-26.  Although Soto knowingly and voluntarily entered a Plea Agreement waiving his right to direct and collateral appeals, see Plea Agreement at 6; Plea Tr. at 11-12, 14-15, 18-21, such a waiver would not bar him from raising an ineffective assistance of counsel claim if his counsel misadvised, coerced, or misled him into entering the plea agreement in the first instance, see Baird, 445 F. App'x at 254.  However, a knowing and voluntary waiver does preclude a petitioner such as Soto from pursuing a claim that counsel provided ineffective assistance at sentencing.  Williams, 396 F.3d at 1341-42.  The Eleventh Circuit has explained that "a contrary result would permit a defendant to circumvent the terms of the sentence-appeal waiver simply by recasting a challenge to his sentence as a claim of ineffective assistance, thus rendering the waiver meaningless."  Id. at 1342.

Here, Soto does not allege that his attorney coerced, misled, or misadvised him into entering the plea agreement in the first place.  Rather, Soto argues that counsel was ineffective for (1) failing to object to jurisdiction, and (2) failing to object to the use of prior uncounseled convictions to increase his sentence under the Sentencing Guidelines.  Because these arguments do not strike at the validity of the Plea Agreement itself, they are barred by Soto's waiver of collateral appeals.

13

Even if Soto had not waived his right to collateral review, however, his ineffective assistance of counsel claims would fail on the merits. As with any Sixth Amendment ineffective assistance of counsel claim, a § 2255 petitioner must demonstrate both: (1) that his counsel's conduct amounted to constitutionally deficient performance, and (2) that his counsel's deficient performance sufficiently prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); Weeks v. Jones, 26 F.3d 1030, 1036 (11th Cir. 1994). In determining whether the petitioner has satisfied the first requirement, i.e. that counsel performed deficiently, the Court adheres to the standard of reasonably effective assistance. Weeks, 26 F.3d at 1036. The petitioner must show, in light of all the circumstances, that counsel's performance fell outside the "wide range of professionally competent assistance." Id. To satisfy the second requirement, that counsel's deficient performance prejudiced the defendant, the petitioner must show that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. Id. at 1036-37 (citing Strickland, 466 U.S. at 694). In determining whether a petitioner has met the two prongs of deficient performance and prejudice, the Court considers the totality of the evidence. Strickland, 466 U.S. at 695. However, because both prongs are necessary, "there is no reason for a court … to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697; see also Wellington v. Moore, 314 F.3d 1256, 1261 n. 1 (11th Cir. 2002) ("We need

14

not discuss the performance deficiency component of [petitioner's] ineffective assistance claim because failure to satisfy the prejudice component is dispositive.").

With respect to Soto's first ineffective assistance of counsel claim, because, as discussed above, this Court had jurisdiction to sentence Soto, his attorney's failure to object to jurisdiction was neither deficient nor prejudicial. United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) (applying Strickland and holding that "a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client"); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (crediting as professionally reasonable counsel's decision not to file what he believed to be a meritless motion). Nor was Soto's counsel ineffective at sentencing.

Soto complains that his attorney failed to object to the use of prior uncounseled convictions from California to enhance his sentence under the Sentencing Guidelines. Supporting Memorandum at 25-26. Soto had four convictions from California, two for driving while license suspended and two for misdemeanor marijuana possession. Sentencing Tr. at 13. Each of the four convictions accounted for one criminal history point under the Sentencing Guidelines. See U.S.S.G. §4A1.2(c)(1)(A). Soto received an additional two points for committing the instant offense while under sentence, giving him a total of six points, and putting Soto in Criminal History Category III of the Sentencing Guidelines. Supporting Memorandum at 25. Soto claims that if counsel had challenged the use of the prior uncounseled convictions, and if a November, 2010 change to § 4A1.1(d) of the Sentencing Guidelines were applied to him, he would have

15

had no criminal history points.  In that event, Soto contends that he would have qualified for sentencing below the 10-year mandatory minimum through application of the "safety valve" provision set forth in Section 5C1.2 of the Sentencing Guidelines and Title 18, United States Code, Section 3553(f).  Section 5C1.2 and 18 U.S.C. § 3553(f) allow for sentencing within the Guidelines, but below a mandatory minimum, where the defendant has no more than one criminal history point.  18 U.S.C. 3553(f)(1).

Soto's argument fails for at least two reasons.  First, Soto's counsel did object to the use of his criminal history at sentencing.  See Sentencing Tr. at 12-13.  Nevertheless, the Court overruled the objection and the Eleventh Circuit later affirmed his sentence.  United States v. Soto, 433 F. App'x 838 (11th Cir. 2011).  Second, the Court properly considered the prior uncounseled misdemeanor convictions in calculating Soto's criminal history status.  See Nichols v. United States, 511 U.S. 738, 748-49 (1994).  Thus, regardless of counsel's performance, the Court properly held Soto accountable for four criminal history points, making him ineligible for the "safety valve" provision of 18 U.S.C. 3553(f).[6]  Consequently, Soto would have been bound by the mandatory minimum sentence he ultimately received, and cannot show that counsel's performance prejudiced him under Strickland.

---

[6] Soto also argues that the Court was wrong to add two criminal history points for committing the instant offense while under sentence pursuant to USSG §4A1.1(d), claiming that on November 1, 2010, the Sentencing Guidelines were amended to eliminate that provision.  Supporting Memorandum at 25.  The Court need not address this error as it would have been harmless because Soto would still have been ineligible for the "safety valve" provision of 18 U.S.C. §3553(f) on account of having four criminal history points from prior convictions.

16

Consistent with the foregoing, the Court finds Soto is barred from collaterally attacking his sentence on the ground he received ineffective assistance of counsel, but that counsel was effective nonetheless.  As such, the Motion to Vacate will be denied.

**IV.     Certificate of Appealability Pursuant to 28 U.S.C. § 2253(c)(1)**

If Soto seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253 (c)(2). To make this substantial showing, Soto "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335–36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would

find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

As such, and in accordance with the Rules Governing Section 2255 Cases in the United States District Courts, it is hereby

**ORDERED:**

1. Antonio Soto's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody under 28 U.S.C. § 2255 (Doc. 1, Motion to Vacate) is **DENIED**.

2. The Clerk shall enter judgment in favor of the United States and against Antonio Soto, and close the file.

3. If Soto appeals the denial of the petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 3rd day of July, 2014.

*[signature]*
MARCIA MORALES HOWARD
United States District Judge

Lc19
Copies:
Counsel of Record
pro se party